United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Renell Jones, Petitioner-Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-21478-Civ-Scola |
| | ) | |
| Secretary, Florida Department of Corrections, Respondent-Defendant. | ) ) | |

## Order Adopting Magistrate Judge's Report and Recommendation and Denying Petition for Writ of Habeas Corpus

Before the Court is Magistrate Judge Jonathan Goodman's report (R. & R., ECF No. 14) recommending the denial of Renell Jones's petition for writ of habeas corpus under 28 U.S.C. § 2254. (Pet., ECF No. 1.) This case was referred to United States Magistrate Judge Jonathan Goodman for a ruling on all pre-trial, non-dispositive matters and for a report and recommendation on any dispositive matters. (ECF No. 3.) Judge Goodman issued a report recommending that the Court deny the petition for writ of habeas corpus because the Petitioner has failed to show that the state court judgment was contrary to, or an unreasonable application of, clearly established federal law pursuant to 28 U.S.C. § 2254(d). (*See generally* R. & R.) The Petitioner has filed objections to Judge Goodman's report (Objs., ECF No. 15), and the Respondent has filed a response (Resp., ECF No. 18). The Court has considered the petition (ECF No. 1), the Magistrate Judge's report and recommendations (ECF No. 14), the Petitioner's objections (ECF No. 15), and the Respondent's response (ECF No. 18). The Court has made a de novo review of the briefing, the record, the relevant legal authorities, and is otherwise fully advised. For the reasons explained below, the Court **adopts** the Magistrate Judge's report and recommendations (**ECF No. 14**) and **denies** the petition. (**ECF No. 1**.)

### 1. Background

On July 2, 2012, Miguel Lopez Garcia ("the Victim") was stabbed to death in his home. (Pet. at 3.) During the resulting investigation, Miami-Dade police officers discovered phone records connecting the Petitioner, Mr. Jones, to an individual scheduled to participate in a drug deal at the Victim's home. (*Id.*) Those messages revolved around Mr. Jones's travel plans from Maryland to South Florida, including where Mr. Jones could purchase a taser. (*Id.*)

About two years later, Maryland officers detained Mr. Jones on an unrelated Maryland charge. (*Id.* at 4.) During his detention, two Miami-Dade detectives began interrogating him. (*Id.*) During the interrogation, Mr. Jones confessed to the Victim's murder and was then arrested and charged with several crimes, including first-degree murder. (*Id.*) Mr. Jones moved to suppress the statements from the interrogation, arguing that they were inadmissible because Mr. Jones did not validly waive his *Miranda* rights, and even if he had, Mr. Jones unequivocally invoked his *Miranda* rights later in the interrogation. (*Id.* at 12-13.) Alternatively, Mr. Jones argued that any waiver of his *Miranda* rights was the result of coercion or other impropriety on the part of the police officers. (*Id.*)

The Florida state trial court denied Mr. Jones's motion to suppress, and a jury found Mr. Jones guilty on all counts. (R. & R. at 3.) Mr. Jones was sentenced to life for first-degree murder and armed burglary with assault or battery, 30 years for armed robbery with a deadly weapon, and five years for conspiracy to commit armed robbery. (*Id.*)

The Petitioner then filed a direct appeal to the Third District Court of Appeal, which affirmed the trial court's denial of Mr. Jones's motion to suppress per curiam without a written explanation, barring Mr. Jones from appealing to a higher state court. (Pet. at 15; R. & R. at 3 (citing *Jackson v. State*, 926 So. 2d 1262, 1266 (Fla. 2006) (holding that "article V, section 3(b)(1) of the Florida Constitution does not authorize [the Florida Supreme] Court's jurisdiction over unelaborated per curiam decisions issued by a district court of appeal")).)

Now, Mr. Jones petitions for a writ of habeas corpus for federal review of the state trial court's decision denying his motion to suppress and its subsequent per curiam affirmance. For the reasons stated below, Mr. Jones's petition is denied.

## 2. Legal Standards

### A. Habeas corpus relief

Relief pursuant to 28 U.S.C. § 2254 is available to correct only constitutional injury, not as an avenue for a federal court to opine on state court decisions regarding state law. *See* 28 U.S.C. § 2254; *see also Barclay v. Florida*, 463 U.S. 939, 957-58 (1983) (holding that "mere errors of state law are not the concern of this court, unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution"); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that "it is not the province of a

federal habeas court to reexamine state-court determinations on state-law questions").

A court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). Under the AEDPA, there is "a critical difference between the question of whether to reverse for a claimed constitutional error on direct appeal and the question of whether to grant habeas relief after the state courts have rejected the claim of constitutional error." *Ferguson v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 1315, 1331 (11th Cir. 2013). AEDPA is intended to "guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016). AEDPA imposes a highly deferential standard, and "demands that state-court decisions be given the benefit of the doubt[.]" *Renico v. Lett,* 559 U.S. 766, 773 (2010).

On any claim adjudicated on its merit, a federal court may grant a habeas petition only if the state court's decision either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court's decision is "contrary to" established Supreme Court precedent if it either applies a rule that contradicts the governing law set forth by the Supreme Court or confronts a set of facts materially indistinguishable from a decision of the Supreme Court but still results differently from the Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (O'Connor, J., concurring)).

A state court's decision involves an "unreasonable application of, clearly established Federal law" if the state court correctly identifies the governing legal principle from the Supreme Court's decision but unreasonably applied that principle to the facts of the particular case. *Id.* This inquiry focuses on whether the state court decision is objectively unreasonable. *Id.* An objectively "unreasonable application" is different from an incorrect application of federal law because "[t]he term 'unreasonable' in § 2254(d) is reserved for 'extreme malfunctions in the state's criminal justice system,' not for 'ordinary error' or even for cases 'where the petitioner offers a strong case for relief.'" *Samuel v. Carlin*, No. 2:20-CV-00545-REP, 2023 WL 3627647, at *3 (D. Idaho May 24, 2023) (quoting *Mays v. Hines,* 592 U.S. 385, 391 (2021) *(per curiam)*).

The standard for granting federal habeas relief is "difficult to meet." *Mays*, 592 U.S. at 391 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). Courts will not find the existence of an unreasonable application of federal law where "fair-minded jurists could disagree" on the correctness of the state court's decision. *Harrington*, 562 U.S. at 101.

### B. Review of a report and recommendations

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783-84 (11th Cir. 2006) (quoting *Heath v. Jones,* 863 F.2d 815, 822 (11th Cir. 1989) (cleaned up). The objections must also present "supporting legal authority." Local Mag. J. R. 4(b). Once a district court receives "objections meeting the specificity requirement set out above," it must "make a de novo determination of those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." *Macort*, 208 F. App'x at 783-84 (quoting *Heath,* 863 F.2d at 822) (cleaned up). To the extent a party fails to object to parts of the magistrate judge's report, those portions are reviewed for clear error. *Macort*, 208 F. App'x at 784 (quoting *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 739 (7th Cir. 1999)). A court, in its discretion, need not consider arguments that were not, in the first instance, presented to the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009).

### 3. Analysis

Judge Goodman concluded in his report that the state court did not apply a rule that contradicted established Supreme Court precedent, nor did the state court confront a set of facts materially indistinguishable from a Supreme Court case. (*See* R. & R. at 15.) Therefore, the state court's decision was not contrary to clearly established federal law as determined by the Supreme Court. Mr. Jones timely filed objections to Judge Goodman's report and recommendations, arguing that the state court did in fact unreasonably apply clearly established federal law. (*See* Objs. at 7.) The Respondent disagrees, arguing that Judge Goodman was correct because Mr. Jones has not met the high threshold required for habeas corpus relief. (*See generally* Resp.)

As a preliminary matter, at the start of each objection, the Petitioner improperly adopts and realleges the entirety of his § 2254 petition, ignoring the rule that objections to a magistrate judge's report must clearly specify the objection and the basis for the objection. (Objs. at 3, 8, 13, 16, 20, 24.) *See*

*Macort*, 208 Fed. App'x. at 784-85 (holding that objections must be made with specificity to be reviewed de novo by district courts). The Court only considers the properly made objections to Judge Goodman's report, as set forth below.

### A. The alleged violations of Mr. Jones's *Miranda* rights do not rise to the level of extreme malfunction of the state's criminal justice procedure required for federal habeas relief.

Mr. Jones's first three objections relate to the state court's holding that Mr. Jones validly waived his *Miranda* rights during the interrogation in Maryland. (*See generally* Pet.) Judge Goodman recommended that habeas relief is not appropriate on this ground because the state court did not unreasonably apply clearly established federal law by admitting Mr. Jones's confession. (*See generally* R. & R.) Mr. Jones objects, arguing that the state court unreasonably applied clearly established federal law for three reasons: 1) Mr. Jones's signed waiver form was invalid, 2) Mr. Jones's subsequent invocation of his *Miranda* rights was unequivocal, and 3) the officer's coercive tactics during the interrogation voided any waiver of Mr. Jones's *Miranda* rights. (*See generally* Objs.)

#### *(1) Mr. Jones validly waived his Miranda rights.*

Judge Goodman concluded, and the Court agrees, that the state court did not unreasonably apply *Miranda* in denying Mr. Jones's motion to suppress because Mr. Jones knowingly and voluntarily waived his *Miranda* rights before confessing. (*See* R. & R. at 15-16.) Mr. Jones objects to Judge Goodman's recommendation because the officers minimized the importance of Mr. Jones's *Miranda* rights to obtain the waiver. (*See* Objs. at 3-8.)

In *Miranda*, the Court recognized that custodial interrogations create "compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Moran v. Burbine*, 475 U.S. 412, 420 (1986) (quoting *Miranda v. Arizona*, 384 U.S. 436, 472 (1966)). In response to these situations and to protect the Fifth Amendment privilege against self-incrimination, "*Miranda* imposed on the police an obligation to. . . . inform [the defendant] of his rights to remain silent and to have counsel present . . . if [he] so desires." *Id.* (cleaned up). However, a defendant may waive these rights if the "waiver is made voluntarily, knowingly, and intelligently." *Id.* at 421.

When Mr. Jones was detained by Maryland authorities for an unrelated charge, two Miami-Dade officers entered "to get some preliminary information." (Pet. at 4.) The officers asked Mr. Jones whether he had been arrested before and read his *Miranda* rights, and Mr. Jones verbally agreed. (*Id.* at 5.) Then,

the officers presented Mr. Jones with a *Miranda* waiver form, and said "[b]asically, we just bring you a form. Just so you know how to read." (*Id.*) After Mr. Jones read the first paragraph, the officer told Mr. Jones, "[i]f you could, just take the pen, if you understand just put your initials next to yes." (*Id.*) Mr. Jones then signed the form. (*Id.*)

The state court held that this signed form was a valid waiver of Mr. Jones's *Miranda* rights. (*See* R. & R. at 12-14.) However, Mr. Jones argues that the police presented the form as a "literacy test," which "minimized the importance of the rights," rendering the waiver ineffective because he did not understand that he was waiving his rights by signing. (Pet. at 21 (quoting *Ross v. State*, 45 So. 3d 403, 432 (Fla. 2010)).) Judge Goodman concluded that the state court did not err because Mr. Jones did not "explain why the state court's application of *Miranda* was unreasonable." (R. & R. at 16.) Mr. Jones objects to Judge Goodman's report because *Miranda* requires a waiver to be made knowingly and voluntarily. (Objs. at 4.) Mr. Jones claims he did not know he was waiving his *Miranda* rights when he signed the form, rendering the waiver invalid. (*Id.*)

The determination of whether a defendant's waiver is made voluntarily, knowingly, and intelligently "has two distinct dimensions." *Moran*, 475 U.S. at 421 (citing *Edwards v. Arizona*, 451 U.S. 477 (1981)). First, the waiver must be voluntary, meaning that the waiver is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* Second, the waiver must be knowingly made, meaning that the waiver is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* Some courts have found that a signed waiver form alone may constitute a valid waiver. (*See* R. & R. at 12 (citing *State v. Roman*, 983 So. 2d 731, 735 (Fla. 3d Dist. Ct. App. 2008)).) However, the question of whether Mr. Jones validly waived his *Miranda* rights is not a question of form "but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). A court must look to the "totality of the circumstances surrounding the interrogation" to determine whether a waiver is valid. *Moran*, 475 U.S. at 421.

For example, in *Butler*, a defendant read his own *Miranda* rights and verbally acknowledged that he understood those rights but did not sign the waiver. 441 U.S. at 371. He then spoke to the officers and provided incriminating statements. *Id.* The trial court admitted those statements into evidence, but the state Supreme Court reversed, finding that the admission of the statements violated the defendant's *Miranda* rights because he did not sign the waiver form. *Id.* at 371-72. However, the United States Supreme Court

again reversed the state court's holding because the defendant understood his rights and still chose to continue speaking with the officers, which constituted a voluntary and knowing waiver of the defendant's *Miranda* rights. *Id.* at 372-73.

 Similarly, here, Mr. Jones voluntarily waived his *Miranda* rights because he heard the *Miranda* warning out loud, read and signed the waiver, acknowledging that he understood those rights, and then chose to talk to the officers. (*See* Pet. at 22.) Even if the officers minimized the waiver form by describing it as a "literacy test," Mr. Jones still read the waiver, made the decision to provide his signature, and chose to speak with the officers.

 In assessing the totality of the circumstances, a court can also consider Mr. Jones's previous experiences with the justice system and education level. (*See* R. & R. at 12 (citing *Moran*, 475 U.S. at 421); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (holding that the totality of the circumstances includes "both the characteristics of the accused and the details of the interrogation.").) Prior to the administration of his *Miranda* rights, the officers asked Mr. Jones whether he had been arrested before and read his *Miranda* rights, and Mr. Jones answered affirmatively to both. (Pet. at 5.) Therefore, Mr. Jones acknowledged his familiarity with the right to counsel during interrogation and voluntarily chose to proceed in this matter without it. Additionally, Mr. Jones is a college graduate, and in the trial court's order denying Mr. Jones's motion to suppress, the judge found that "[i]t is obvious from the manner in which Mr. Jones expresses himself throughout the interview that he is educated, of above-average intelligence, and has no difficulty comprehending the terms used in the *Miranda* waiver." (ECF No. 10 at 185-86.) Therefore, Mr. Jones knowingly waived his *Miranda* rights because he knew he was being detained for a crime and chose to continue speaking with the officers without counsel present.

 Mr. Jones cites *Ross v. State* in his objections because the Florida Supreme Court has previously held that minimization of *Miranda* rights by officers may invalidate a waiver. 45 So. 3d at 432. But *Ross* is both a state court case and distinguishable from the present matter. There, the officers did not read the defendant his *Miranda* rights until after the defendant had confessed to the murders. *Id.* at 410. Once the defendant made incriminating statements, the officer stated, "[t]here's a couple of things that I need to go over with you *real quick. . . .* [I]t's *just a matter of procedure, um, based on everything we're talking about.*" *Id.* at 429 (emphasis in original). Then, after reading the defendant his *Miranda* rights, the officers continuously reminded the defendant of the incriminating statements he made previously. *Id.* The facts here are substantially different. The officers did not wait until Mr. Jones confessed to

mention his *Miranda* rights; Mr. Jones read and signed the *Miranda* waiver form prior to the interrogation. (*See generally* Pet.)

Thus, given the totality of the circumstances and the high standard for federal habeas relief, the Court cannot find that no fair-minded jurists would agree with the state court's ruling that Mr. Jones knowingly and voluntarily waived his *Miranda* rights.

### *(2) The officers did not violate Mr. Jones's Miranda rights when they continued their interrogation after Mr. Jones equivocally invoked his Miranda rights.*

Next, Mr. Jones argues that the state court unreasonably applied *Edwards v. Arizona*, 451 U.S. 477 (1981) because Mr. Jones unequivocally invoked his *Miranda* rights after signing the waiver. (*See* Objs. at 8-12.) Specifically, after Mr. Jones signed the waiver form and the officers began their questioning, Mr. Jones said, "if you're telling me somebody [died], I think I need to get an attorney." (*Id.* at 8.) Mr. Jones argues that this was an unequivocal invocation of his *Miranda* rights, and that therefore the officers should have ceased their interrogation. (*Id.*) However, Judge Goodman concluded that the statements were equivocal because Mr. Jones's invocation was ambiguous and because the officers followed up by asking clarifying questions to determine whether Mr. Jones was actually invoking his rights. (R. & R. at 19-20.) Mr. Jones objects because the Eleventh Circuit has previously deemed a similar statement an unequivocal invocation. (Objs. at 9-10.) Additionally, Mr. Jones objects to the report on the grounds that when a defendant invokes his *Miranda* rights, the officers should not ask clarifying questions but cease the interrogation completely. (*Id.*)

Even when a defendant validly waives his *Miranda* rights, "if the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, [or if he] states that he wants an attorney, the interrogation must cease." *Miranda*, 384 U.S. at 472 (1966); *see also Edwards*, 451 U.S. at 484-85 (1981) (holding that even if the accused has validly waived his *Miranda* rights, once an accused has "expressed his desire to deal with the police only through counsel, [the accused] is not subject to further interrogation by the authorities."). The applicability of this rule "requires courts to determine whether the accused actually invoked his right to counsel. This is an objective inquiry, requiring some statement that can reasonably be construed to be an expression of a desire for an attorney's assistance." *Davis v. United States*, 512 U.S. 452, 458-59 (1994). However, a defendant's invocation must be unequivocal, meaning that "a reasonable police officer in the circumstances would understand the statement to be a request for an

attorney." *Id.* (citing *Edwards,* 451 U.S. at 485). On the other hand, if a defendant's invocation is "ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.* at 459.

Mr. Jones cites to *Cannady v. Duggar* to show that "I think I need a lawyer" was an unequivocal assertion of the right to counsel. 931 F.2d 752, 755 (11th Cir. 1991). In *Cannady*, the defendant was incarcerated on other charges when he became a suspect in a murder. *Id.* at 754. An officer read the defendant his *Miranda* rights and began questioning him about the murder. *Id.* In one of the initial interviews, the defendant presented an alibi defense, but when the officer investigated the alibi, he discovered inaccuracies. *Id.* The officer returned and confronted the defendant. *Id.* At some point during this interrogation, the defendant said "I think I should call my lawyer." *Id.* Then the officer "pushed the phone toward [the defendant] and waited for him to make the call." *Id.* at 755. The court found that the defendant's statement was unequivocal because the officer knew the defendant was requesting counsel as demonstrated by the officer pushing the phone toward him. *Id.* When the defendant did not place a call, the officer then asked, "would you like to talk about it?" *Id.* The court held that this was not a clarifying question because it was specifically about the murder and not about the defendant's invocation of his *Miranda* rights. *Id.* Therefore, the Eleventh Circuit granted the defendant's petition for a writ of habeas corpus because the officer knew that the defendant was invoking his *Miranda* rights and did not cease the interrogation. *Id.*

Here, Mr. Jones did not just say "I think I need to get a lawyer." He stated that "if you're telling me somebody [died], I think I need to get an attorney." (*See* Objs. at 9-10.) Because Mr. Jones included "if," a reasonable officer in this circumstance could have understood that Mr. Jones was considering invoking his *Miranda* rights, but not unequivocally invoking them. Additionally, the officer's following statements support the state court's decision that the invocation was equivocal. The officer then said, "You, see, you understand what I'm saying. I'm giving you a full chance to do whatever you want. You want to talk to an attorney, that's fine, but you said if. If you still want to keep talking to me, this is your opportunity to talk to me." (*Id.* at 11.) The officer's statement was a permissible clarifying question because it did not seek answers regarding the murder. Instead, the officer offered Mr. Jones an opportunity to unequivocally invoke his *Miranda* rights. Mr. Jones did not take the opportunity to invoke his *Miranda* rights and instead allowed the interrogation to continue. (*Id.*)

Mr. Jones again does not meet the high bar required to grant federal habeas relief. The Court cannot find that no fair-minded jurist would agree with the state court's decision that Mr. Jones failed to unequivocally invoke his *Miranda* rights during the interrogation. The Court therefore also affirms and adopts Judge Goodman's recommendation that the petition be denied on that basis.

### *(3) The officers did not coerce or mislead Mr. Jones into waiving his Miranda rights.*

Mr. Jones next argues that any waiver of his *Miranda* rights was invalid because *Miranda* requires a valid waiver to be made without "intimidation, coercion, or deception." *Moran*, 475 U.S. at 421. Judge Goodman concluded that the state court did not unreasonably apply *Miranda* because the officers never directly lied to Mr. Jones, gave legal advice, or directly contradicted the rights *Miranda* is intended to protect. (*See* R. & R. at 21-35.) In objecting to Judge Goodman's report, Mr. Jones points to three separate instances in which the officers misled and coerced him into waiving his *Miranda* rights. (*See* Objs. at 13-24.)

First, Mr. Jones alleges that the officers directly lied to Mr. Jones to convince him to waive his *Miranda* rights. (Objs. at 13.) Specifically, the officers told Mr. Jones that the "smart thing" to do was to talk to them and that if he did not talk, the officers would charge Mr. Jones based on his co-defendant's statements. (*Id.*) Mr. Jones argues that this was a lie because the police did not have the necessary probable cause to arrest him, and that therefore the "objectively smart thing to do would have been to remain silent." (*Id.* at 14 (cleaned up).) Mr. Jones cites to both *Hart v. Attorney General*, 323 F.3d 884 (11th Cir. 2003), and *United States v. Blair*, No. 8:08-CR-0450-T-33EAJ, 2009 U.S. Dist. LEXIS 125811 (M.D. Fla August 21, 2009), to demonstrate that "police lies about the consequences of waiving *Miranda* can render a waiver invalid." (*Id.*)

In *Hart*, the defendant requested to speak with a specific female detective that he trusted and asked her about the pros and cons of having a lawyer present. 323 F.3d at 888. The detective explained that a disadvantage of having a lawyer present is that "I'm going to want to ask you questions and he's going to tell you [that] you can't answer me." *Id.* The officer also told him that "honesty wouldn't hurt him." *Id.* at 889. The court found that "[t]he reason for requiring a lawyer during custodial interrogation is to protect a suspect's privilege against self-incrimination, yet, [the female officer] in effect told [the defendant] that this was the disadvantage of having a lawyer." *Id.* at 894. The Eleventh Circuit held that "[g]iven the totality of the circumstances

surrounding the interrogation, which include [the defendant's] trust of [the officer] and [the officer's] statements contradicting the *Miranda* warnings," the court could not find that the defendant's waiver was made knowingly and voluntarily. *Id.* at 895.

In *Blair*, the officer made similar, contradictory statements, saying "if you want to do time, dude tell me you want to talk to a lawyer and I'll do this thing," and "if you want to do less time, talk to me." 2009 U.S. LEXIS 125811, at *5. The court held that "[p]romising or suggesting that incriminating statements will result in a lower sentence suffers the same problems as suggesting that 'honesty wouldn't hurt.'" *Id.* at *16. In both cases, the officers directly contradicted the *Miranda* warning that "any statement made by [the defendant] may be used as evidence against him in trial." 10 U.S.C. § 831.

Here, the Miami officers did not contradict *Miranda* by stating that the "smart thing" to do is talk to them. Instead, they prefaced these statements by saying that Mr. Jones's legal situation would be better if he talks "because the detective will talk to the state attorney and tell him that Petitioner was honest." (Pet. at 30.) The Respondent argues, and the Court agrees, that because "the State Attorney is exclusively responsible for deciding what charges to bring and whether to prosecute[,] [t]he detectives had no power to decide what charges, if any, to bring against Petitioner, so none of the statements made by the detectives regarding Mr. Jones's charges were false or . . . coerci[ve]." (R. & R. at 26 (citing ECF No. 9 at 37).) Additionally, unlike in *Hart*, the officers here did not have a unique relationship of trust with Mr. Jones, nor did they imply that providing a statement would have no negative consequences; they merely stated that they would advise the state attorney of Mr. Jones's honesty.

Second, Mr. Jones alleges that the detectives misled Mr. Jones by misrepresenting his custody status. (Objs. at 16.) During the interrogation, Mr. Jones said that he wanted to get home, and the officer responded, saying "You're not going home today. That's not happening." (*Id.*) Mr. Jones then asked the officers whether he was being "brought on charges," and the officer responded "yes," but would not tell Mr. Jones what the charges were. (*Id.*) Mr. Jones alleges that the officer's answers were calculated to mislead him because he understood the officer to mean he was in custody for the Florida murder. (*Id.*) However, at the time, Mr. Jones was in custody for an unrelated Maryland charge. (*Id.*) Although Mr. Jones may have misunderstood the officers, the officers never lied to Mr. Jones by telling him he was being charged with murder. The officers only confirmed that he would be charged with a crime, without specifying which specific crimes.

Mr. Jones argues that such a crafty answer is a misrepresentation of law, which may "lead [a defendant] to make an incorrect calculation about

whether he should talk to the police, and clearly here just that was the intent of the officers." (Objs. at 17 (citing *United States v. Lall*, 607 F.3d 1277 (11th Cir. 2010)).) Mr. Jones cites to *Ramirez v. State*, 739 So. 2d 568, 577 (Fla. 1999) because "the Florida Supreme Court found that police telling a defendant he was not under arrest, when in fact he was, rendered a *Miranda* waiver involuntary." (*Id.*) However, in *Ramirez*, the officers approached a juvenile defendant, who had little experience with the justice system, at his home. 739 So. 2d at 572. The officer said, "I want you to tell me what happened that night. I know you were there. I wouldn't be here if I didn't know that. You know what I'm saying?" *Id.* The juvenile defendant then admitted to breaking into the victim's house the night of the murder. *Id.* After the juvenile defendant made the incriminating statements, the officers finally informed him of his *Miranda* rights. *Id.* The defendant then asked if he was "being placed under arrest," and the officer said "No, no, I'm just reading your rights at this time." *Id.* However, prior to approaching the defendant, the officers had a videotaped conversation providing sufficient probable cause to arrest the juvenile defendant. *Id.* Additionally, the officers never obtained a written waiver of the juvenile's *Miranda* rights until after he had been brought to the station and confessed to the murder without access to his parents or counsel. *Id.* The court considered the totality of the circumstances, which included the defendant's age and inexperience, the officer's deliberate delay in administering the defendant's *Miranda* rights, and the officer's denial of the defendant's custody status despite having the necessary probable cause. *Id.* at 576. The court held that based on the totality of the circumstances, the defendant's waiver was invalid. *Id.* at 578.

 Here, the officers did not mislead Mr. Jones into waiving his *Miranda* rights. The officers had already presented Mr. Jones with the *Miranda* form before Mr. Jones questioned the charges being brought against him. Also, in *Ramirez*, the officers lied about the juvenile defendant's custody status when they told him he was not under arrest. 739 So. 2d at 572. Here, the officers did not misrepresent Mr. Jones's custody status. Mr. Jones asked if he was being brought on charges, and the officers answered truthfully that he was. Additionally, the totality of the circumstances in this case point in the opposite direction of those in *Ramirez* because Mr. Jones was not a juvenile defendant confronted at his home. Mr. Jones was not a child inexperienced in the justice system; he was a college-educated, 41-year-old man who had prior arrests and familiarity with his *Miranda* rights. (R. & R. at 13.) Therefore, the officers did not mislead Mr. Jones into waiving his *Miranda* rights by misrepresenting his custody status.

Third, Mr. Jones argues that the officers gave "false advice about the consequences of invoking or waiving his *Miranda* rights," rendering Mr. Jones's waiver involuntary, unknowing, and unintelligent. (Pet. at 29.) Specifically, Mr. Jones argues that the officers misled Mr. Jones into believing that his silence would be admissible at trial. (Objs. at 20-21.) However, on review of the record, the officers did not advise Mr. Jones regarding the admissibility of his silence. Instead, the officers presented Mr. Jones with a potential scenario in which his co-defendants would testify against him, and the jury would wonder why, if Mr. Jones was innocent, he did not speak to the officers when he first had the chance. (*See* R. & R. at 30.) This speculative discussion, while perhaps likely to be misconstrued, does not rise to the level of false legal advice rendering the state court's decision unreasonable.

In sum, the officers did not directly lie to Mr. Jones, misrepresent his custody status, or give Mr. Jones false legal advice. Additionally, the officers did not contradict *Miranda* while interrogating Mr. Jones. Therefore, the Court cannot find that the officer's alleged misrepresentations are so wholly violative of Mr. Jones's constitutional rights that Mr. Jones is entitled to federal habeas relief.

### B. Other aspects of Mr. Jones's detention do not reach the threshold for federal habeas relief.

Mr. Jones's final objection relates to the length of his detention and the cooperation between Maryland and Florida authorities. (Objs. at 25.) Mr. Jones argues that Maryland authorities coordinated with Miami-Dade officers to illegally detain Mr. Jones for many hours, violating Mr. Jones's constitutional rights under *Anderson v. United States*, 318 U.S. 350 (1943). (*See* Objs. at 24-26.)

Judge Goodman concluded that Mr. Jones's argument was unpersuasive because *Anderson* applied state rather than federal law in finding that the defendants had been unlawfully detained. (R. & R. at 37.) Mr. Jones objects to Judge Goodman's finding because *Anderson* is a federal case reviewed by the Supreme Court. (Objs. at 25.) Mr. Jones argues that although the Supreme Court "did find that Tennessee law was violated in *Anderson*, . . . the case was not decided based on the state law violation, but the fact that the confessions (in a federal case) were secured improperly though collaboration with state officers." (*Id.*) The Respondent concedes that *Anderson* applies but maintains that Mr. Jones's detention did not reach the level necessary for habeas corpus relief, and the Court agrees. (*See* Resp. at 17.)

In *Anderson*, the defendants were detained by a police officer who lacked state law authority in a Y.M.C.A. building and were not properly arrested until

six days later, contravening Tennessee law. 318 U.S. at 352, 355-56. The defendants were "[u]naided by relatives, friends, or counsel, . . . unlawfully held, some for days, and subjected to long questioning in the hostile atmosphere of a small company-dominated mining town," and "[i]ncriminating statements from six of the petitioners were the fruit of this interrogation." *Id.* at 356. The court found that "[t]here was a working arrangement between the federal officers and the [local] sheriff . . . which made possible the abuse revealed by this record." *Id.* Because the defendants were unlawfully held for days, subjected to questioning for long periods of time in a hostile atmosphere, and there was a working arrangement between the federal officers and local sheriffs, the Supreme Court held that the incriminating statements were inadmissible at trial. *Id.*

Mr. Jones argues that *Anderson* should be applied here because Maryland officers violated Maryland law by purposefully delaying Mr. Jones's arraignment through an illegal working arrangement between Maryland authorities and the Miami-Dade detectives. (*See* Objs. 24-26.) However, in *Anderson,* the Supreme Court did not find the statements inadmissible only because of the coordination between the federal and state officers. 318 U.S. at 356. Instead, the Supreme Court found the statements inadmissible because of "the abuse revealed by the record," which included but was certainly not limited to the illegal coordination. *Id.*

Here, the Petitioner does not establish that the state court unreasonably applied clearly established federal law when it held that Mr. Jones's statements were admissible despite the length of his detention and the coordination between state authorities. Even if Mr. Jones's detention was longer than necessary, Mr. Jones does not present any authority that the statements must be suppressed because of a several-hour delay. Therefore, the Court agrees with Judge Goodman that Mr. Jones has not shown that the state court's holding admitting the confession was an "extreme malfunction" of the state's criminal system.

Mr. Jones also argues that the coordination between Maryland authorities and the Miami-Dade officers was an illegal working arrangement meant to obtain Mr. Jones's incriminating statements. However, during Mr. Jones's motion to suppress hearing, Detective Garcia, a Maryland officer, testified that a Maryland officer was executing a search warrant for Mr. Jones's residence, and the detective did not return until 7:30 P.M. (ECF No. 9 at 56.) The Maryland Court of Special Appeals "gave examples of situations where a delay would be regarded as necessary." *Odum v. State,* 156 Md. App. 184, 202 (Md. Ct. Spec. App. 2004) (quoting *Johnson v. State,* 384 A.2d 709 (Md. 1978)). One such example is when an officer is delayed because he was "obtain[ing]

relevant nontestimonial information likely to be significant . . . in preventing the loss, alteration or destruction of evidence relating to such crime." *Johnson*, 384 A.2d at 717. The Florida officers interrogated Mr. Jones at 6:00 P.M. and argue that the Maryland officers allowed them to do so out of "professional courtesy." (Resp. at 19.) The Court sees no basis for disagreement with either Judge Goodman or the state courts when Mr. Jones's presentment before a judicial officer would have been delayed due to the search warrant even if the Miami-Dade officers had not interrogated him.

Any coordination between Maryland authorities and the Miami-Dade officers was not a pre-planned arrangement to obtain Mr. Jones's incriminating statements. A court may only grant habeas corpus relief if the state court's decision was "so obviously wrong that its error lies beyond any possibility for fair-minded disagreement." *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam) (cleaned up). Mr. Jones has failed to establish that the state court's decision was "an extreme malfunction of the state's criminal justice system" rising to this level. Therefore, although Mr. Jones argues that the state court unreasonably applied *Anderson*, the state court's decision does not meet the high standard necessary to grant federal habeas relief.

### 4. Conclusion

The Court finds Judge Goodman's report and recommendations cogent and compelling, and cannot find that any portion of the state court's decision that resulted in a decision that is contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). Therefore, the Court **affirms and adopts** Judge Goodman's report and recommendations (**ECF No. 14**) and **denies** the petition for a writ of habeas corpus. (**ECF No. 1**.)

Finally, Rule 11(a) of the Rules Governing § 2254 cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, then "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." To merit a certificate, a Petitioner must show "that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise." *United States v. Rhodes*, No. 8:13-cr-347-T-23TGW, 8:16-cv-1752-T- 23TGW, 2016 WL 4702430, at *4 (M.D. Fla. Sept. 8, 2016) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001)).

Here, Mr. Jones fails to establish that reasonable jurists would find debatable the merits of the underlying claims because Mr. Jones would need to

show more than "ordinary error" to establish his entitlement to the issuance of a writ of habeas corpus. *See Mays*, 592 U.S. at 391. Federal habeas relief requires a state's ruling to be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103. For all the reasons above, Mr. Jones has not met this burden. Therefore, the Court will not issue a certificate of appealability.

**Done and ordered**, at Miami, Florida, on July 25, 2024.

_____
Robert N. Scola, Jr.
United States District Judge